IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 2, 2016

**KELCEY Z. WILLIAMS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Gibson County**
**No. H9185      Clayburn Peeples, Judge**

**No. W2015-01170-CCA-R3-PC  -  Filed April 08, 2016**

The Petitioner, Kelcey Z. Williams, appeals from the post-conviction court's denial of relief from his conviction for second degree murder.  On appeal, the Petitioner argues that he received ineffective assistance of counsel and that his guilty plea was not knowing, voluntary, and intelligent.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and TIMOTHY L. EASTER, JJ., joined.

April Elgin (at post-conviction hearing) and Will Taylor Hughes (on appeal), Jackson, Tennessee, for the Defendant-Appellant, Kelcey Z. Williams.

Herbert H. Slatery III, Attorney General and Reporter; Matthew Todd Ridley, Assistant Attorney General; Garry Brown, District Attorney General; and Hillary Parham, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

This appeal arises from the October 2011 murder of Lonzell Smith.  For this offense, the Petitioner, age seventeen, was indicted by the Gibson County Grand Jury for first degree premeditated murder on December 5, 2011.  On July 26, 2013, four days before his trial was set, the Petitioner, pursuant to North Carolina v. Alford, 400 U.S. 25 (1970), entered a "best interest" guilty plea to second degree murder, for which he was sentenced to twenty-five years at 100 percent.

At the July 26, 2013 guilty plea hearing, the Petitioner affirmed that he wished to proceed with his plea, stating, "Let's get it over with." The trial court then engaged in a dialogue with the Petitioner regarding his desire to plead guilty. The Petitioner stated that he signed the plea form, that he discussed the form with his attorney, and that he "underst[ood] everything on it." The trial court explained to the Petitioner his rights and the rights he would be giving up by pleading guilty. The Petitioner indicated that he understood his rights, understood that he would be found guilty upon entry of the Alford plea, and understood the legal effect of the plea. He confirmed that he had sufficient time to discuss his decision with his attorney and that he was satisfied with his attorney's representation.

The State then summarized the underlying facts of the Petitioner's conviction as follows:

> [O]n October the 2nd of 2011 [the Petitioner] and a young lady by the name of Terrica Cartwright went to a home in Humboldt, Tennessee where the victim was in bed, Lonzell Smith. They knocked on the door. She knocked on the door. Ultimately, knocked on the window. Mr. Smith came out on the porch and at that time he was shot and killed by [the Petitioner]. Later on [the Petitioner] told one of his friends that he had, in fact, shot the victim.

The State further noted that it would have requested a sentence of life without parole if the case had proceeded to trial. Counsel, on the Petitioner's behalf, responded that, while the Petitioner maintained his innocence, he wished to enter a "best interest" plea in light of the strength of the State's case. Counsel also noted that he and the Petitioner had discussed the State's offer and that the Petitioner had freely and voluntarily accepted the plea. The Petitioner agreed that counsel's statements were accurate and that the trial court's description of the plea agreement matched his understanding. Upon finding that the Petitioner's guilty plea was knowing and voluntary, the trial court accepted the plea.

On July 1, 2014, the Petitioner filed a timely pro se petition for post-conviction relief. The Petitioner was subsequently appointed counsel, and an amended petition was filed on his behalf on January 21, 2015, alleging, inter alia, that he received ineffective assistance of counsel and that his guilty plea was involuntarily and unknowingly entered.

At the May 11, 2015 post-conviction hearing, the Petitioner testified that he was unable to review certain documentary evidence before he entered his plea. This evidence included the criminal records of the State's witnesses, Terrica Cartwright and Michael Beard, as well as the statements any "other people" provided to police related to the Petitioner's case. The Petitioner believed that the State improperly withheld the

evidence, but he conceded that he never discussed this concern with counsel. However, he notified counsel's investigator, who he spoke to most often regarding his case. The Petitioner estimated that he talked to counsel "like four times" and his investigator about seven or eight times.

The Petitioner also advised counsel's investigator to speak to a person named "Chancellor Johnson." He believed that Johnson had information that would show that Cartwright and Beard were lying. However, he said counsel did not interview or subpoena Johnson for trial. He also said that counsel failed to investigate a potential alibi witness whose name and address the Petitioner had previously provided. Moreover, the Petitioner testified that he and counsel never discussed or reviewed any text messages or video evidence, although a video of the Petitioner was taken twenty minutes before the alleged offense.

The Petitioner also testified that the only pretrial motions filed in his case were three motions he filed on his own behalf. He said that, even though he was represented by counsel, he felt it necessary to file the motions himself "[b]ecause . . . wasn't nobody [sic] doing nothing on my case[.]" He conceded that he had not expressed any concern about the status of his case to counsel, but he did send counsel two or three letters "ask[ing] him like what was going on with [his] case[.]" He noted that counsel did not move to suppress his prior statement to police or the statements of any opposing witnesses. The Petitioner also did not believe that counsel had subpoenaed any witnesses to testify on his behalf at trial.

The Petitioner pointed out that he had an "[u]nruly charge" from juvenile court, had a history of contact with the Department of Children Services ("DCS"), and had previously undergone drug rehabilitation programs. He attended school until the twelfth grade but did not graduate and made poor grades. Furthermore, the Petitioner testified that he was nineteen years old at the time of his plea and did not understand the long-term implications of a criminal sentence. However, he conceded that the trial court questioned him about his plea and explained to him in detail about the rights he was giving up. The Petitioner noted,

> [E]ven if he asked me was I pleased with this counsel, if I said no, what could I state again to prove that I was -- you know what I'm saying. I didn't know what to -- I didn't understand it, you know what I'm saying? I just took the plea, 25 years or a life sentence. I thought -- I wasn't gonna come in here and let the court find me guilty in front of my momma.

He also said that he felt pressured to take the plea offer because he was concerned about the state of his defense in going to trial. The Petitioner felt that counsel made no effort to

contradict the testimony of the State's witnesses, that counsel's actions and inactions negatively impacted his case, and that the outcome of his case would have been different if he had a different attorney.

The Petitioner conceded on cross-examination that he understood that entering a "best interest" plea meant that he would be found guilty. He agreed that members of Pathways Behavior Health Services evaluated him before his plea but was unaware that they had determined that he was mentally competent to stand trial. Finally, the Petitioner said that he was never granted physical possession of the information or discovery that counsel's investigator had obtained.

Trial counsel testified that he had access to the criminal records of Cartwright and Beard and would have obtained and reviewed them. He could not independently recall the video taken of the Petitioner shortly before the charged offense but noted, "I'm sure we did [receive it]." Counsel believed that his investigator reviewed the video with the Petitioner but could not remember if he was present when they discussed it. He confirmed that there were various inconsistencies in the statements provided by Cartwright. Counsel added, "Our office position has always been that [the Petitioner]'s not the person who killed Mr. Smith. That's what we thought from the beginning." Counsel further testified that, to his knowledge, the State's file did not contain any physical evidence linking the Petitioner to the scene. However, he noted that the State, having an open file policy, would not have provided him directly with any information they intended to use at trial.

Counsel estimated that he and the Petitioner made contact four to six times and noted that the Petitioner met more often with his investigator. He also said that they contacted the Petitioner's purported alibi witness but the witness could not provide for the Petitioner's whereabouts during the time in which the offense occurred. Counsel also attempted to contact the other witnesses that had provided statements to the police regarding the offense. However, he noted,

> Of course, you have to understand the context of this. Supposedly, some or all of these people were members in a gang and supposedly someone had ordered a hit, according to Mr. Beard, and on Mr. Smith, because of some disrespect that had been shown to their social organization . . . but, obviously or perhaps not so obviously, none of those people really wanted to talk a whole lot about ordering somebody to be killed or whether they would have encouraged somebody to be killed. . . . The police didn't have a whole lot of interest, it didn't look like. They had a witness, Terrica Cartwright, that said [the Petitioner] did it. Mr. Beard jumped up and said that, "He told me he did it." They didn't need to look any further.

-4-

Counsel testified that there was mention of text messages in some of the statements made to the police but that none of this material was in the State's file. He further testified that he and the Petitioner discussed alternative theories of how the offense occurred, such as an unrelated gang being involved. He noted that he had asked the Petitioner's family to gather any relevant information or "street talk" and that his investigator questioned various people about the offense. However, he said that they were ultimately unable to obtain any information that changed the basis of the State's proof, which consisted primarily of the testimony of Cartwright and Beard. Counsel agreed that there were grounds for impeaching the State's witnesses and explained that this would have been his defense strategy at trial. Counsel conceded that there were "probably not" any pretrial motions filed other than discovery. Furthermore, he agreed that the Petitioner was not "sophisticated in the knowledge of courts and procedures," but he said that he had explained the State's plea offer to the Petitioner and encouraged him to speak with his family before making a decision about a plea. At counsel's request, the Petitioner was permitted to call his family from jail to discuss the plea. Counsel noted, "I believe [the Petitioner] was actually a little bit forceful in explaining to who he was talking to, 'This is what I've decided to do[.]'"

On cross-examination, counsel confirmed that he did not file a motion to suppress the Petitioner's statement. However, he testified that there would be no reason to suppress the statement if the Petitioner denied participating in the offense. Counsel did not specifically recall discussing a change of venue with the Petitioner but noted, "In most instances[,] I don't think that's the smartest thing to do." Moreover, he said that there was no basis to disqualify any of the State's witnesses.

Following the hearing, the post-conviction court orally denied relief. The court credited the testimony of counsel, noting that "his and his staff did a great, great deal of work on behalf of [the Petitioner]." The court, finding that counsel thoroughly investigated the Petitioner's case, stated

I can't think of anything [counsel] could have done other than what he did. He certainly met the standards of criminal defense attorneys in the State of Tennessee. He certainly explored alternative theories to the extent that there was one. He correctly, in my opinion, identified the issues that placed the Defendant in jeopardy, particularly the main one, that being that there was somebody who said he did it and he had no alibi for that particular time, but did have alibis for all the time around that time.

The fact that no pre-trial motions were filed is meaningless. You know, the question is, was there a pre-trial motion that should have been filed that would have made a difference and I can think of none and the

-5-

Defendant has – it's always tragic when a defendant is 17 at the time a crime like this occurs and there's always the danger of not just the immaturity that may or may not have caused the crime, but an immaturity that will keep the defendant from knowingly and intelligently entering a plea.

To the extent that the law requires that a plea be knowingly and intelligently made the Court finds the Defendant did that.

The Court finds that he had excellent legal advice at the time he did and that that excellent legal representation had fully protected his rights from the time [counsel] was appointed until the plea was entered.

The post-conviction court subsequently issued a written order denying relief on May 20, 2015. It is from this order that the Petitioner now timely appeals.

## ANALYSIS

On appeal, the Petitioner asserts that he received ineffective assistance of counsel and that his guilty plea was involuntary and unknowing. He argues that counsel's performance was deficient based on his failure to investigate potential witnesses, to develop an adequate defense, or to file any pretrial motions. He further contends that but for counsel's deficiencies, he would have proceeded to trial rather than plead to a lesser offense. The State responds that the Petitioner failed to show that counsel's performance was deficient or that he was prejudiced as a result of any deficiency. The State further argues that the Petitioner's guilty plea was entered knowingly, intelligently, and voluntarily. Upon review, we agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty

and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

The Petitioner contends that counsel provided ineffective assistance based on his failure to investigate witnesses, develop an adequate defense, or file pretrial motions. In denying relief, the post-conviction court concluded that counsel "[t]horoughly investigated this case" and rendered "excellent legal advice." The record does not preponderate against the post-conviction court's findings. During the evidentiary hearing, the Petitioner failed to identify or call any witnesses who may have changed the outcome of his trial. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner."). In addition, counsel, whose testimony the post-conviction court credited, testified that he investigated the Petitioner's potential alibi witness but nonetheless could not establish an alibi for the period in which the offense occurred. Moreover, counsel testified that he and his investigator met with the Petitioner on multiple occasions, at which time they discussed and explored alternative defense theories. In addition, counsel testified that there was no basis for filing any pretrial motions and that, under the circumstances, his best defense strategy was to discredit the State's witnesses. Beyond his own testimony, which was discredited by the post-conviction court, the Petitioner put forth no proof demonstrating that he received ineffective assistance. Accordingly, he is not entitled to relief on this issue.

The Petitioner further contends that his guilty plea was not knowing or voluntary because counsel's failure to adequate develop a defense led him to feel pressured into accepting a plea offer. The validity of a guilty plea is a mixed question of law and fact that is reviewed de novo. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010). To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. Id. (citing State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)). "[T]he record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea[.]" Mackey, 553 S.W.2d at 340; see Tenn. R. Crim. P. 11(b)(1). When determining whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Lane, 316 S.W.3d at 562 (quoting Grindstaff v. State, 297 S.W.3d 208, 218 (Tenn. 2009)). If a guilty plea is not knowingly, voluntarily, and intelligently entered, then the defendant has been denied due process, and the guilty plea is void. Id. (citations omitted).

A plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). In determining whether a guilty plea is voluntarily and intelligently entered, a trial court must look at a number of factors, which include the following:

> 1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing Blankenship, 858 S.W.2d at 904).

Here, it has already been established that counsel provided adequate representation in preparing the Petitioner's case for trial. Moreover, counsel testified that he explained and discussed the terms of the State's plea offer with the Petitioner and that the Petitioner was given the opportunity to discuss the plea with his family. Furthermore, as reflected in the guilty plea transcript, the trial court provided the Petitioner with a detailed explanation of his rights and the rights he was giving up by entering a plea. The court also advised the Petitioner of the length of his sentence, including the 100 percent service requirement, as well as the long-term legal implications that would result from his conviction. The Petitioner stated that he understood the terms and legal consequences of the plea agreement, and he assured the court that his decision to enter a plea was voluntary. Thus, we agree with the post-conviction court that the Petitioner has failed to prove by clear and convincing evidence that his guilty plea was involuntary and unknowing. The Petitioner is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE

-9-